### UNITED STATES of America

v.

### AVONDALE INDUSTRIES, INC., et al.

### Civ. A. No. 89–957–B.

United States District Court,
M.D. Louisiana.

Oct. 12, 1993.

Paul Raymond Lamonica, U.S. Atty., M.D. Louisiana, Baton Rouge, LA and Molly E. Hall, Washington, DC, for the U.S.

Robert Earl Holden, Liskow & Lewis, New Orleans, LA, for Avondale Industries, Inc.

James Rodney Chastain, Jr., Breazeale, Sachse & Wilson, Baton Rouge, LA, for BASF Corp., BP Exploration, Brown &

Root, Inc., Browning–Ferris Industries Chemical Services, Inc., Cenac Towing Co., Ciba–Geigy Corp., Cos–Mar Co., Ethyl Corp., Exxon Corp., Gatx Terminals Corp., Geosource, Inc., Kaiser Aluminum and Chemical Corp., Mobil Oil Corp., Port Allen Marine Services, Shell Oil Co., Southern Scrap Material Co., Ltd., Transcontinental Gas Pipe Line Co., and Trinity Industries.

B. Richard Moore, Jr., Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, LA, for St. Paul Ins. Co.

Richard N. Dicharry, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, LA, for Certain Underwriters Lloydd's London and Firemen's Fund Ins.

Samuel M. Rosamond, III, Boggs, Loehn and Rodrigue, New Orleans, LA, for Commercial Union Ins. Co. and Employers Commercial Union Ins.

Michael L. Berry, Jr., Laborde & Neuner, Lafayette, LA, for Joc Oil Exploration.

Herschel C. Adcock, Jr., Baton Rouge, LA, for Cooper Glider Chemical Co., Inc.

Floyd A. Wisner, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, LA, for Style & Companies.

Eric Earl Jarrell, Nesser, King & LeBlanc, New Orleans, LA, for American Marine Corp. and Don Cole.

Richard A. Curry, McGlinchey Stafford Lang, Baton Rouge, LA, Freedman's Ship Yard.

Glennon P. Everett, Everett & Everett, Crowley, LA, for Frenchies Oil Salvage, Inc.

Morton H. Katz, Herman, Herman, Katz & Cotlar, New Orleans, LA, and Thomas H. Brown, and Brian M. Clark, Birmingham, AL, for Harrison Bros. Dry Dock and Repair Yard, Inc.

Thomas C. Cowan, Christovich & Kearney, New Orleans, LA, for Koch–Ellis Barge and Ship Service, Inc. and Koch–Ellis Marine Contractors, Inc.

John I. Goodwin, Thomas James Wagner, Wagner, Bagot & Gleason, and Francis Philip Accardo, Montgomery, Barnett, Brown,

Read, Hammond & Mintz, New Orleans, LA, for Highlands Ins. Co.

Charles C. Culotta, Jr., Patterson, LA, for Marine Vacuum, Inc.

Jan T. Van Loon, Normand F. Pizza, Brook, Morial, Cassibry, Pizza & Adcock, New Orleans, LA, and Jon C. Adcock, Brook, Morial, Cassibry, Pizza & Adcock, Baton Rouge, LA, for Robert C. Wolff.

Homer Ed Barousse, Jr., Edwards, Stefanski, Barousse, Cunningham, Stefanski & Zaunbrecher, Crowley, LA, for Hansbrough Energy Systems.

William Alexander Porteous, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, for Arkwright Mut. Ins.

## RULING ON THIRD–PARTY DEFENDANT'S MOTION TO DISMISS

POLOZOLA, District Judge.

This matter is before the Court on motions to dismiss for lack of personal jurisdiction and for failure to prosecute filed by Harrison Brothers Dry Dock and Repair Yard, Inc. ("Harrison"). For reasons which follow, the Court finds that each motion should be denied.

The United States brought this action under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA")[1] to recover response costs associated with the release of hazardous substances at the Dutchtown Oil Treatment Site near Dutchtown, Louisiana. On December 12, 1989, the original defendants entered into a Consent Decree with the United States. Pursuant to the Consent Decree, the defendants and other potentially responsible parties executed the Dutchtown Oil Reclamation Site Participation Agreement, which created the Dutchtown Steering Committee ("Steering Committee"). Thereafter, the Steering Committee filed a third-party complaint against Harrison and other parties to recover a portion of the clean-up and remediation costs at the Dutchtown site.

1. 42 U.S.C. §§ 9601–9675 (1983 & Supp.1993).

Harrison contends that its motion to dismiss the third-party complaint should be granted for two reasons: (1) the Court has no personal jurisdiction over Harrison; and (2) the Steering Committee failed to prosecute the action against Harrison as required by Rule 41(b) of the Federal Rules of Civil Procedure.

## I. Personal Jurisdiction

Harrison's business is located in Mobile, Alabama, and is engaged in the business of repairing and dry docking ships. Occasionally, Harrison cleaned ships that were used to transport unadulterated petroleum products, a nonhazardous substance.[2] After these ships were cleaned, Harrison would sell the residual petroleum product to M–K Fuel Systems ("M–K"). M–K picked up the product from Harrison in Mobile. Harrison apparently had no knowledge of the ultimate destination of the residual product. The Steering Committee alleges in its third-party complaint that the petroleum product which was purchased from Harrison by M–K ultimately was dumped at the Dutchtown Oil Treatment Site. Harrison had no other contacts with Louisiana.

■ In order to establish jurisdiction over Harrison, two conditions must be satisfied: (1) Harrison must be amenable to service of process under Louisiana's long-arm statute; and, (2) the assertion of jurisdiction over Harrison must be consistent with the Fourteenth Amendment due process clause.[3] The Steering Committee must only establish a prima facie case for personal jurisdiction.

Proof by a preponderance of the evidence is not required.[4]

The first prong of the test is satisfied because the Louisiana long-arm statute extends to the limits of due process.[5] Therefore, the Court must determine whether the exercise of personal jurisdiction over Harrison comports with due process.

■ Under the federal constitutional test of due process, the Steering Committee must overcome two hurdles to justify the exercise of personal jurisdiction over Harrison: (1) the Steering Committee must establish that Harrison had sufficient "minimum contacts" with Louisiana; and, (2) the exercise of jurisdiction over Harrison must not offend "traditional notions of fair play and substantial justice." [6]

### A. Minimum Contacts

■ The minimum contacts necessary to establish jurisdiction over a nonresident defendant must arise from actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." [7] The Court may exercise specific jurisdiction over actions related to the defendant's contacts, provided the contacts resulted from the defendant's purposeful conduct rather than the plaintiff's unilateral activities.[8]

In *World–Wide Volkswagen Corp. v. Woodson,*[9] the United States Supreme Court described the degree of purposeful conduct necessary to satisfy the minimum contacts

---

**2.** Petroleum is specifically excluded from the definition of a "hazardous substance" as set forth in CERCLA at 42 U.S.C. § 9601(14).

**3.** *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992); *Irving v. Owens–Corning Fiberglas Corp.,* 864 F.2d 383, 385 (5th Cir.1989); *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081, 1083 (5th Cir.1984).

**4.** *Jones,* 954 F.2d at 1067; *Irving,* 864 F.2d at 384.

**5.** *Bean Dredging Corp.,* 744 F.2d at 1083 ("The Louisiana Long–Arm Statute is to be interpreted liberally in favor of finding jurisdiction ... and is to extend to the full limits of due process under

the fourteenth amendment.") (citing *Quasha v. Shale Development Corp.,* 667 F.2d 483, 486 (5th Cir.1982).

**6.** *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Jones,* 954 F.2d at 1068; *Irving,* 864 F.2d at 385.

**7.** *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *Jones,* 954 F.2d at 1068.

**8.** *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 67, 62 L.Ed.2d 490 (1980); *Irving,* 864 F.2d at 385.

**9.** 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

test as follows: "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." [10] The Supreme Court further stated that foreseeability for personal jurisdiction purposes turns on whether "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." [11]

Four years after *World–Wide Volkswagen,* the Fifth Circuit decided *Bean Dredging Corp. v. Dredge Technology Corp.*[12] In *Bean Dredging,* the Fifth Circuit held that a Washington state component manufacturer which had injected its steel castings into the stream of commerce had established sufficient contacts with Louisiana to permit personal jurisdiction. The component manufacturer in *Bean Dredging* sold the steel castings to a California manufacturer, which incorporated the castings in cylinders ultimately sold to a Louisiana shipyard.

The facts in *Bean Dredging* established that the component manufacturer did not: (1) know where or how the castings were to be used; (2) sell directly to any Louisiana company; (3) solicit business in Louisiana; or (4) own property in Louisiana. The president of the company merely acknowledged that his company's products could end up anywhere in the United States once they entered the stream of commerce.[13] The Fifth Circuit found the above activity was sufficient to establish jurisdiction over the nonresident component manufacturer.

In 1989, the United States Supreme Court decided *Asahi Metal Industries Co. v. Superior Court.*[14] In *Asahi,* four justices favored a narrow interpretation of the stream of commerce doctrine in a case ultimately decided under the "fair play and substantial justice" prong of the due process test. Justice O'Connor's plurality opinion disagreed with the stream of commerce test as applied by the Fifth Circuit in *Bean Dredging,* in which "mere foreseeability ... [establishes] personal jurisdiction if the defendants' product made its way into the forum state while still in the stream of commerce." [15] Instead, Justice O'Connor advocated a requirement of additional conduct by the defendant to support personal jurisdiction. However, an equal number of justices refused to require a showing of additional conduct under the stream of commerce doctrine.

Because the Supreme Court's opinion in *Asahi* provided no clear guidance on the issue, the Fifth Circuit has continued to examine a nonresident defendant's contacts with the forum state under the stream of commerce standard as described in *World–Wide Volkswagen,* and as embraced by the Fifth Circuit in *Bean Dredging.*[16] This Court will follow the standard enunciated by the Fifth Circuit. Therefore, the Court finds that Harrison's contacts with Louisiana should be examined under the stream of commerce standard as set forth in *World–Wide Volkswagen* and explained in *Bean Dredging.*

Through the sale of residual petroleum to M–K, Harrison injected a product into the stream of commerce, just as the manufacturer injected its steel castings into commerce in *Bean Dredging.* Harrison received economic benefits from the sale of petroleum residue to M–K, and placed no geographic limitations on M–K's ability to dispose of the product. Although neither Harrison nor the casting manufacturer in *Bean Dredging* knew the final destination of its products, each could reasonably anticipate being haled into court in Louisiana.

**10.** *World–Wide Volkswagen,* 444 U.S. at 297–8, 100 S.Ct. at 567.

**11.** *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

**12.** 744 F.2d 1081 (5th Cir.1984).

**13.** *Bean Dredging,* 744 F.2d at 1082, 1085.

**14.** 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1988).

**15.** *Asahi,* 480 U.S. at 111, 107 S.Ct. at 1031, 94 L.Ed.2d at 103.

**16.** See *Irving v. Owens–Corning Fiberglass Corp.,* 864 F.2d 383, 386 (5th Cir.1989).

The fact that the residual petroleum may have been sold as a waste product is of no consequence. Through the sale of the petroleum residue to M–K, Harrison injected a product into the stream of commerce. The petroleum residue generated by Harrison was ultimately transported to the Dutchtown site in Louisiana.

The Court finds under the facts of this case and the legal precedents set forth in *Bean Dredging* and Irving that Harrison has sufficient contacts with Louisiana to support the exercise of personal jurisdiction. Therefore, the Court must now determine whether the exercise of jurisdiction over Harrison comports with traditional notions of fair play and substantial justice.

### B. The Fairness of the Louisiana Forum

█ Under the second prong of the due process analysis, the Court must determine if it would be fair to require Harrison to defend this suit in Louisiana. To resolve this fundamental fairness issue, the Court must consider the: (1) defendant's burden, (2) forum state's interests, (3) plaintiff's interest in convenient and effective relief, (4) judicial system's interest in efficient resolution of controversies; and, (5) states' shared interest in furthering fundamental social policies.[17]

█ A review of the record reveals that it is both fair and reasonable to require Harrison to defend this suit in Louisiana. Harrison's petroleum product was disposed of in Louisiana, and the United States instituted its cost recovery action under CERCLA in this forum. This litigation involves multiple parties. It is in the interest of justice and judicial economy to allow a single judicial proceeding in Louisiana involving all of the parties to resolve this issue rather than engaging in piecemeal litigation in several different forums. The Court further finds that requiring Harrison to defend this action in Louisiana will not impose an unreasonable inconvenience on it. In summary, the maintenance of the Steering Committee's third-party claim against Harrison does not offend traditional notions of fair play and substantial justice.

Therefore, Harrison's motion to dismiss for lack of personal jurisdiction is hereby denied.[18]

### II. Failure to Prosecute Under Rule 41(b)

Harrison further contends that the Steering Committee's claim should be dismissed with prejudice for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) provides:

**(b) Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits.

█ Rule 41(b) allows the district court to dismiss an action for failure to prosecute upon the motion of a defendant.[19] This authority is based on the court's power to manage and administer its own affairs, and to ensure the orderly and expeditious disposition of cases.[20] However, a dismissal with prejudice under Rule 41(b) is an extreme sanction that deprives the litigant of the opportunity to pursue his claim. The Court may only dismiss an action with prejudice

---

17. *Irving*, 864 F.2d at 387 (citing: *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1033, 94 L.Ed.2d at 104; *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564).

18. Because the Court determined that the assertion of personal jurisdiction over Harrison comports with the due process clause of the Fourteenth Amendment, the Court need not address the issue of whether a third-party plaintiff may avail itself of nationwide service of process as provided by Section 113(e) of CERCLA (codified at 42 U.S.C. § 9613(e)).

19. *Colle v. Brazos County*, Tex., 981 F.2d 237, 242–43 (5th Cir.1993).

20. *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1190 (5th Cir.1992).

under Rule 41(b) if: (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the court employed lesser sanctions which proved to be futile.[21]

■ Harrison contends that the Steering Committee created a clear record of delay by deferring service on Harrison for over 34 months. However, a review of the record reveals that the Steering Committee actually served Harrison in July of 1990. Harrison did not file an answer to the complaint. A series of letters filed into the record further indicates that settlement negotiations between the Steering Committee and Harrison continued throughout the period of the alleged delay. The Court has also been actively involved in the settlement negotiations with other parties.

Therefore, the Court finds that there is no clear record of delay or contumacious conduct by the Steering Committee which would justify the dismissal of this case under Rule 41(b). Therefore, Harrison's motion to dismiss under this Rule 41(b) is denied.[22]

### III. Conclusion

Therefore:

IT IS ORDERED that Harrison's motion to dismiss for lack of personal jurisdiction and for failure to prosecute be and each is hereby DENIED.

---

**21.** *Colle,* 981 F.2d at 243; *Berry,* 975 F.2d at 1191.

**22.** See *Berry,* 975 F.2d at 1191 (citing *Morris v. Ocean Systems, Inc.,* 730 F.2d 248, 252 (5th Cir.1984) (no clear record of delay or contumacious conduct where counsel failed twice to comply with court-imposed deadlines requiring counsel to notify court of plaintiff's rejection of settlement offers); *Burden v. Yates,* 644 F.2d 503, 504–05 (5th Cir.1981) (no clear record of delay or contumacious conduct where counsel failed to file three documents on time); *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 556–58 (5th Cir.1981) (no clear record of delay or contumacious conduct where counsel failed to comply with scheduling and other pretrial orders); *Silas v. Sears, Roebuck & Co., Inc.,* 586 F.2d 382, 384–85 (5th Cir.1978) (no clear record of delay or contumacious conduct where counsel failed to answer interrogatories, failed to confer with defendant on pretrial order, and failed to appear at pretrial conference)).