**Michael George HADDAD, Plaintiff,**

v.

**John S. FROMSON, et al., Defendants.**

No. 5:00CV64.

United States District Court,
W.D. Michigan,
Southern Division.

May 2, 2001.

Charles R. Toy, Farhat & Story, PC, East Lansing, MI, for plaintiff.

Mark W. Matus, Jennifer M. Granholm, Attorney General, Corrections Division, Margaret A. Nelson, Jennifer M. Granholm, Attorney General, Tort Defense Division, Lansing, MI, for defendants.

## OPINION

QUIST, District Judge.

This is a civil rights action brought against the Michigan Department of Corrections (MDOC), the Michigan Department of State Police (MSP), John S. Fromson, an employee of the MDOC, and unnamed employees of MDOC and MSP. Plaintiff's complaint, filed by counsel, seeks damages on a number of federal and state-law theories arising from Defendants' actions in publishing Plaintiff's name on the Michigan Sex Offenders Registry and not deleting his name therefrom after Plaintiff's conditional plea of *nolo contendere* to a sex offense was withdrawn. The matter is now before the court on dispositive motions filed by all defendants. For the reasons set forth below, the court concludes that Defendants' motions should be granted. All federal claims against the individual defendants will be dismissed. Plaintiff's federal claims against the departmental defendants and all his state-law claims will be remanded to the state courts.

### Facts

On February 1, 1998, Plaintiff was charged in the Clinton County Circuit Court with one count of criminal sexual conduct, first-degree, MICH. COMP. LAWS § 750.5206, arising from an alleged sexual assault upon his sister. On July 10, 1998, Plaintiff entered a conditional plea of *nolo contendere* to a reduced charge of criminal sexual conduct, fourth-degree, MICH. COMP. LAWS § 750.520e. After the guilty plea hearing, the circuit judge instructed Plaintiff to meet with Defendant John S. Fromson, a probation officer employed by the MDOC. Plaintiff and Fromson completed paperwork relevant to sentencing. In addition, Fromson obtained Plaintiff's signature on a "Michigan Sex Offender Registration" form, as required by the Michigan Sex Offender Registration Act (SORA), MICH. COMP. LAWS § 28.721–.732. SORA requires persons convicted of certain sex offenses to complete a registration form upon conviction, before sentencing or entry of the final order of disposition. MICH. COMP. LAWS § 28.724(4). The Act requires certain state officers, including probation officers, to provide the registration form "after the individual is convicted," explain the duty to register and accept the completed registration for processing. *Id.* In the present case, the state officer with responsibility to execute the requirements of the statute was defendant Fromson, who completed the form and provided plaintiff with a copy. On the same day, July 10, 1998, Fromson delivered the completed registration form to Clinton County Central Dispatch, where the information was entered into the Law Enforcement Information Network.

Plaintiff appeared for sentencing before the Clinton County Circuit Court on October 5, 1998. At the sentencing hearing, the trial judge did not sentence Plaintiff, but allowed him to withdraw his conditional *nolo contendere* plea and placed the matter back on the trial docket. On February 1, 1999, the MSP implemented SORA by posting on the Internet a Public Sex Offender Registry (Registry) identifying Plaintiff, among others, as a convicted sex offender. Approximately ten days later, on February 11, 1999, the Clinton County Circuit Court dismissed the criminal case against Plaintiff, because Plaintiff's sister had refused to release her medical records as ordered by the Court.

On February 4, 1999, Plaintiff discovered that his name was on the Registry. His counsel informed the MSP that the charge against him had been dismissed. Plaintiff's name was thereafter removed from the Registry, although the parties disagree concerning the date of removal.

Plaintiff initiated a civil action against the MDOC and MSP in the Michigan Court of Claims. He initiated a separate suit against Defendant Fromson and unknown employees of MDOC and MSP in the Ingham County Circuit Court, alleging that the publication of his name on the Registry violated SORA and constituted defamation. The two cases were consolidated on March 30, 2000. On May 30, 2000, Plaintiff filed an amended complaint in the consolidated action, alleging for the first time claims arising under federal law. On June 13, 2000, Fromson and MDOC removed the case to this court pursuant to 28 U.S.C. § 1446, with the written consent of MSP.

The amended complaint filed in the consolidated state-court action sets forth Plaintiff's claims in this removed case. Counts I and II arise under state law and set forth claims under SORA and state defamation law. Counts III, IV, and V purport to set forth claims against the departmental defendants arising directly under the federal Constitution: equal protection (count III); substantive due process (count IV); and procedural due process (count V). Count VI asserts a civil rights claim under 42 U.S.C. § 1983 against Fromson and unnamed individual Defendants for violation of Plaintiff's rights to equal protection and due process of law. Count VII arises under the Michigan Constitution. Defendants have filed dispositive motions directed to all federal claims.

## Discussion

### I. Departmental Defendants

The MDOC and MSP have moved to dismiss the complaint on their own behalf and on behalf of their employees named in their official capacities. Their motion raises two separate and distinct grounds for dismissal: Eleventh Amendment immunity and failure to state a claim under 42 U.S.C. § 1983.

#### A. *Eleventh Amendment Immunity*

■ The Eleventh Amendment provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. CONST. amend. XI. Although the amendment by its terms prohibits only suits against a state by citizens of another state or by aliens, the Supreme Court has held that the amendment's fundamental principles of sovereign immunity negate federal exercise of jurisdiction over suits by citizens against their own states as well. *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Mumford v. Basinski,* 105 F.3d 264, 267 n. 3 (6th Cir.1997). The Eleventh Amendment bars any suit, absent consent, against the state regardless of the form of relief requested. *Pennhurst,* 465 U.S. at 100–01, 104 S.Ct. at 908. It is well settled that the Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. 900; *Alabama v. Pugh,* 438 U.S. 781,

782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (*per curiam*). Additionally, claims in federal court against state employees brought against them in their official capacities must be dismissed on Eleventh Amendment immunity grounds, as a suit against a state officer in his or her official capacity is tantamount to a suit against the state itself. *See Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).

Absent consent, the bar of the Eleventh Amendment precludes Plaintiff from suing either of the departmental Defendants or the individual Defendants in their official capacities, regardless of the nature of the claim. Both MDOC and MSP are departments of the State of Michigan created by statute. MICH. COMP. LAWS § 791.201 (MDOC); § 16.250 (MSP). Accordingly, these departments and their employees acting in their official capacities are immune from federal court suit.

▪ In opposing the motion to dismiss these defendants, Plaintiff argues that the State of Michigan has waived its Eleventh Amendment immunity by removing this action from the state courts. The Supreme Court has long recognized that a state's sovereign immunity is a " 'personal privilege which it may waive at its pleasure.' " *College Sav. Bank v. Florida Prepaid Postsecondary Exp. Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999) (quoting *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883)). The test for determining whether a state has waived its immunity from federal court jurisdiction is a "stringent one." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985). The Supreme Court has held that a state may waive its sovereign immunity by voluntarily submitting itself to federal court jurisdiction. *See College Sav. Bank,* 527 U.S. at 675–76, 119 S.Ct. at 2226.

▪ Even in this context, however, the waiver of sovereign immunity must be done by act of the state legislature. *See Ford Motor Co. v. Dep't of Treasury of Ind.,* 323 U.S. 459, 468–69, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945). Consequently, when a claim of waiver is based upon an action of executive branch officers submitting to federal court jurisdiction, the central issue "becomes one of their power under state law to do so." 323 U.S. at 467, 65 S.Ct. at 352; *see Magnolia Venture Capital Corp. v. Prudential Securities, Inc.,* 151 F.3d 439, 445 (5th Cir.1998) ("[A] state through its constitution, statutes, or court decisions, must expressly authorize a state agency or representative to waive the state's Eleventh Amendment immunity."); *Estate of Porter By Nelson v. Illinois,* 36 F.3d 684, 690 (7th Cir.1994) ("[S]tate officials can only waive a state's Eleventh Amendment immunity if they are specifically authorized to do so by the state's constitution, statutes, or decisions."); *Silver v. Baggiano,* 804 F.2d 1211, 1214 (11th Cir.1986) ("[R]emoval by state officials of a suit containing state law claims to federal court does not amount to waiver of Eleventh Amendment immunity unless those state officials are authorized to waive such immunity.") (citations omitted).

▪ As Justice Kennedy has recently made clear, the Supreme Court has never held that mere removal of a case to federal court by state attorneys constitutes a waiver of Eleventh Amendment immunity. *Wisconsin Dep't of Corr. v. Schacht,* 524 U.S. 381, 391–98, 118 S.Ct. 2047, 2054–57, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring). Consequently, in order to find a waiver of sovereign immunity arising from removal of this action by the Michigan Attorney General, this court would be required to first find that the Constitution or laws of the State of Michigan empower the State's Attorney General to waive sover-

eign immunity. Such a finding is precluded by the Sixth Circuit's decision in *Gwinn Area Community Schools v. Michigan,* 741 F.2d 840 (6th Cir.1984). *Gwinn* was a civil action initiated in the Michigan circuit court and removed to this court on petition of all defendants, including the State of Michigan and the Michigan Board of Education, represented by the State Attorney General. On appeal, the Sixth Circuit was faced with the question whether the affirmative act of the Attorney General in joining in the removal petition constituted a waiver of Eleventh Amendment immunity. The Court found no waiver of immunity either in Michigan statutory law or in the action of the Attorney General in removing the case. 741 F.2d at 846–47. As the facts of the present case are indistinguishable from those presented in *Gwinn,* *Gwinn* forecloses a finding of waiver in the present case. *See also Estate of Ritter v. University of Michigan,* 851 F.2d 846, 851 (6th Cir.1988).

Plaintiff has not cited to this court any provision of Michigan constitutional, statutory or common law purporting to empower the State Attorney General to waive the State's Eleventh Amendment immunity. This Court therefore holds that MDOC, MSP, and their employees sued in their official capacities are entitled to Eleventh Amendment immunity, which has not been waived by removing the present action.

### B. *Failure to State A Claim Under 42 U.S.C. Section 1983*

42 U.S.C. § 1983 allows a plaintiff to bring suit in federal court for deprivation of federal constitutional and statutory rights by persons acting under color of state law. Relying on *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the departmental defendants argue for dismissal of the § 1983 claims against them, as neither the states nor their departments are "persons" within the meaning of section 1983

under *Will.* This court is, however, precluded from reaching that defense. Because the Eleventh Amendment defense, found meritorious in section A above, presents a jurisdictional bar to all claims against the departments and their officers sued in an official capacity, the court cannot reach the alternative argument under *Will. Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 337 n. 4 (6th Cir.1990). All claims, state or federal, against the departments and their official-capacity employees will therefore be remanded to the state courts.

### II. *Section 1983 Claims Against Individual Defendants*

▇▇▇▇ The Eleventh Amendment presents no bar to this court's consideration of Plaintiff's federal claims against state actors sued in their individual capacity. *See Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 338–39 (6th Cir.1990). Plaintiff alleges constitutional claims under 42 U.S.C. § 1983 against Defendant John Fromson and unknown officials of MDOC and MSP. Plaintiff may recover damages against these Defendants only if he properly alleges in his complaint that he is suing those Defendants in their individual capacities. *See Wells v. Brown,* 891 F.2d 591, 593 (6th Cir.1989). Count VI of Plaintiff's Complaint, which sets forth his section 1983 claims against the individual Defendants, does not specify whether they are sued in their individual or official capacities. Count VI would technically be subject to dismissal on the ground of this pleading defect. The Sixth Circuit has held, however, that failure to plead individual capacity is curable by amendment. *Pelfrey v. Chambers,* 43 F.3d 1034, 1038 (6th Cir.1995). The Court assumes that Plaintiff could easily remedy this pleading defect. The Court will therefore treat

Plaintiff's Complaint as if it were amended to allege suit against Fromson and the unnamed state officials in their individual capacities only.

### A. Unnamed Defendants

 With regard to the unnamed Defendants, discovery is now closed, and Plaintiff has failed to amend his Complaint to identify these Defendants by name. In general, the use of unnamed defendants is not favored in the federal courts. *See Colle v. Brazos County, Tex.,* 981 F.2d 237, 243 (5th Cir.1993). The mere naming of a person by use of a fictitious title does not make that person a party to a lawsuit, and it does not prevent the entry of final judgment. *Nagle v. Lee,* 807 F.2d 435, 440 (5th Cir.1987). The appropriate treatment of Doe defendants is to delay taking action with regard to them until plaintiff has had an adequate time in discovery to identify them by name. Plaintiff has had that opportunity, but he has failed to properly identify the unnamed Defendants. Those Defendants will therefore be dismissed without prejudice. *See Brown v. Our Lady of Lourdes Med. Ctr.,* 767 F.Supp. 618, 621 (D.N.J.1991), *aff'd,* 961 F.2d 207 (3d Cir.1992). With the dismissal of these Defendants, the only remaining federal claims are those against Defendant John Fromson.

### B. Defendant John Fromson

 Defendant Fromson has moved for summary judgment on the ground of qualified immunity. Qualified immunity protects public officers "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). In *Butz v. Economou,* the Supreme Court explained that "damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judg-

ment based on the defense of [qualified] immunity." 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). Qualified immunity may provide Fromson with an "immunity from suit" so that he is relieved of both discovery and trial. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The question of qualified immunity is a question of law for determination by the judge. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Pouillon v. City of Owosso,* 206 F.3d 711, 718 (6th Cir.2000). Questions of fact may be relevant to this determination, *see Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989), but the ultimate question is one of law: if the defendant undertook certain actions, could any reasonable official have believed that those actions did not violate plaintiff's constitutional right? *See Dominque v. Telb,* 831 F.2d 673, 676–77 (6th Cir.1987).

 In *County of Sacramento v. Lewis,* 523 U.S. 833, 842, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998), the Court said that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* In *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), the Court said that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *See also Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) (noting that "[t]he first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" (quoting 42 U.S.C. § 1983)).

 Plaintiff's Complaint. charges that Fromson violated the provisions of SORA and abridged Plaintiff's rights to due process and equal protection, as guaranteed by the Fourteenth Amendment. Plaintiff devotes a great deal of effort in an attempt to establish a violation of SORA, arguing that Fromson is liable under section 1983 for abridgement of Plaintiff's state statutory rights. Section 1983 applies only to those acts depriving a person of rights secured by the Constitution or laws of the United States. *American Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999). A plaintiff may not base a section 1983 claim upon a violation of state statutory rights. State officials do not lose their qualified immunity merely because their conduct may violate some provision of state law. *See Elder v. Holloway*, 510 U.S. 510, 515, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994); *Davis v. Scherer*, 468 U.S. 183, 193–96, 104 S.Ct. 3012, 3018–20, 82 L.Ed.2d 139 (1984). Consequently, Plaintiff may not base a section 1983 claim upon alleged violation of statutory rights secured by SORA. The only issue for this Court is whether Fromson violated clearly established federal rights guaranteed by the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

### 1. *Equal Protection*

Plaintiff contends that SORA violates his equal protection rights. The Sixth Circuit recently addressed a similar challenge to the constitutionality of Tennessee's Sex Offender Registration and Monitoring Act. *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir.1999), *cert. denied*, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000). In *Cutshall*, the Sixth Circuit noted:

> The Equal Protection Clause provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Unless the legislation classification under attack involves a suspect class, the classification need only be rationally related to a legitimate government goal to survive constitutional challenge. *See Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). "[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249, 87 L.Ed.2d 313.

*Cutshall*, 193 F.3d at 482 (alteration in original).

 In *Cutshall*, the Sixth Circuit held that convicted sex offenders are not a suspect class. *Id.* In addition, the Eastern District has previously held that Michigan's Sex Offender Registration Act does not implicate a fundamental right. *Lanni v. Engler*, 994 F.Supp. 849, 855 (E.D.Mich. 1998) (addressing an equal protection challenge to Michigan's Sex Offender Registration Act). Therefore, SORA is subject to scrutiny under the rational basis test. *Cutshall*, 193 F.3d at 482; *Lanni*, 994 F.Supp. at 855. Given the magnitude of the harm sought to be prevented by the Michigan statute, as well as the indications that sex offenders pose a particular threat of reoffending, it may not be said that the statute is irrational. *Cutshall*, 193 F.3d at 482–83; *Lanni*, 994 F.Supp. at 855. SORA serves legitimate state objectives, namely, of making available to citizens a list of sex offenders. *Lanni*, 994 F.Supp. at 855. Therefore, SORA on its face passes constitutional scrutiny under the Equal Protection Clause.

Plaintiff also challenges SORA as applied to him, arguing that he was treated differently from similarly situated individuals because he was "not convicted of a 'listed offense'" and others not convicted "were not placed on the" list. (Pl.s Br.

Opp'n to Fromson's Mot. for Summ. J. at 3). Plaintiff argues that the Act's definition of "convicted" in Section 2 of the Act, MICH. COMP. LAWS § 28.722(a), does not apply to persons such as Plaintiff, who pled *nolo contendere* but was later permitted to withdraw that plea.

 As a threshold matter, Plaintiff misidentifies the group of persons with whom he is "similarly situated." The Equal Protection Clause, at its heart, requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In an effort to show arbitrary conduct, Plaintiff argues that he was treated differently from all other unconvicted persons in Michigan, in that he alone was singled out for listing on the Registry. Plaintiff's argument conveniently ignores the fact that he was indeed convicted, by virtue of the circuit court's acceptance of his conditional *nolo contendere* plea. Under Michigan law, a plea of *nolo contendere* is an implied admission of guilt and, for purposes of sentencing, is equivalent to a plea of guilty. *See* MICH. COMP. LAWS § 767.37; *People v. New*, 427 Mich. 482–493, 398 N.W.2d 358, 363 (1986). Nor was Plaintiff's plea robbed of its finality by its characterization as a "conditional" plea. Acceptance of a conditional plea merely means that the defendant is adjudicated guilty but does not waive his right to challenge on appeal certain issues (such as the legality of a search) unrelated to factual guilt. *See People v. Smith*, 423 Mich. 427, 378 N.W.2d 384 (1985). A conditional plea is in no sense tentative or incomplete, and it has the same finality as any other guilty plea. Consequently, at the time Fromson acted, Plaintiff had been adjudicated guilty. For Equal Protection Purposes, the issue is whether Fromson treated Plaintiff differently from other persons adjudicated guilty.

 Fromson (and MDOC and MSP) did not treat Haddad any differently than anyone else in his situation. Both in the process of registering and in the process of taking Haddad's name off the Registry, Haddad acted as he and MDOC and MSP normally did when a person pled guilty to a sex offense. MDOC regulations required that probation officers such as Fromson complete the Sex Offender Registration Forms at the time of the interview conducted for purposes of preparing the presentence report. POLICY DIRECTIVE PD 06.01.140 ¶ S; OPERATING PROC. OP 06.01.140 ¶ E. MSP policy directives likewise provided that a person should be registered within seven days of entering a plea (Carr Dep., Ex. 7 at 66, attached to Def. Fromson's Br. Supp. of Mot. for Summ. J.; *see also id.* at 11–13). Fromson's actions were in accordance with these general procedures. "The Equal Protection Clause does not forbid classifications, but simply prevents governmental decision makers from treating differently persons who are in all relevant respects alike," *Lanni*, 994 F.Supp. at 855 (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)). By entering Plaintiff's name on the Registry immediately upon entry of the guilty plea, Fromson treated Plaintiff as he treated all similarly situated individuals. Fromson has not violated Plaintiff's right to equal protection.

## 2. *Due Process Rights*

### (a) Substantive Due Process

 Due process claims can be either procedural or substantive. Plaintiff has not shown a Fourteenth Amendment substantive due process claim. A substantive due process claim protects "the individual against arbitrary action of government." *County of Sacramento*, 523 U.S. at 845, 118 S.Ct. 1708, 1716, 140 L.Ed.2d

1043 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)). "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" 523 U.S. at 846, 118 S.Ct. at 1716 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261 (1992)). In *Lewis,* a police officer drove into sixteen-year-old Philip Lewis during the officer's high-speed pursuit of the motorcycle Lewis had been riding as a passenger. The Supreme Court held that, even though the officer's action may have been reckless, the conduct was not sufficiently shocking to state a substantive due process claim.

■ Here, even assuming that Plaintiff was not required to register under SORA, Fromson's conduct does not rise to the level of "most egregious" police or probation officer conduct. Even if Fromson were negligent in registering Plaintiff, he would not be liable. That this procedure may or may not comport with a correct reading of the Act does not mean that Fromson has violated Plaintiff's federal constitutional rights, let alone done so intentionally or knowingly. Registering Plaintiff pursuant to a valid state law after he pled *nolo contendere* to a sexual conduct offense, without more, is not "arbitrary, or conscience shocking in a constitutional sense." 523 U.S. at 847, 118 S.Ct. at 1717 (quoting *Collins,* 503 U.S. at 128, 112 S.Ct. at 1070).

### (b) Procedural Due Process

■■ "The touchstone of procedural due process is the fundamental requirement that an individual be given an opportunity to be heard 'in a meaningful manner.'" *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir.1996) (quoting *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983), *aff'd,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Plaintiff was allowed to be heard in a meaningful way prior to his conviction: he was only registered after pleading *nolo contendere* to the charge against him in a court of law. His right to procedural due process has therefore not been violated. Plaintiff was not entitled to a separate notice and hearing before his name was added to the Registry. *See Cutshall,* 193 F.3d at 478–79; *Akella v. Michigan Dep't of State Police,* 67 F.Supp.2d 716 (E.D.Mich.1999).

■ Moreover, in order to establish a due process claim, Plaintiff must show that he was deprived of liberty or property by a state actor. *See Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 140–41 (6th Cir.1997). In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that injury to reputation arising from publication of a criminal arrest did not abridge a recognized liberty or property interest under the Fourteenth Amendment. 424 U.S. at 711–12, 96 S.Ct. at 1165. The Court's later decision in *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), reinforced this holding. In *Siegert,* the Court granted qualified immunity to a defendant charged with maliciously and in bad faith publishing a defamatory statement harmful to the plaintiff's reputation and future employment prospects. The Court held that injury to reputation by itself was not a protectable liberty or property interest. 500 U.S. at 233–34, 111 S.Ct. at 1794. The defendant was therefore entitled to qualified immunity because plaintiff "failed to allege a violation of any constitutional right at all." 500 U.S. at 233, 111 S.Ct. at 1794.

■ Plaintiff's due process claim is foreclosed by the Supreme Court's holdings in *Paul* and *Siegert.* Despite Plaintiff's strained attempts to distinguish these cases, the injury to reputation and employability alleged by Plaintiff is precisely the

kind of harm that the Supreme Court has held does not rise to constitutional levels. *See Cutshall,* 193 F.3d at 479 (damage to reputation arising from publication of plaintiff's name on the Tennessee Sexual Offender Registration did not involve a liberty or property interest under the Due Process Clause).

Alternatively, Plaintiff argues that Fromson abridged Plaintiff's fundamental right to privacy. In making this argument, Plaintiff cites the same line of authority, beginning with *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), that the *Cutshall* court thoroughly analyzed and distinguished. 193 F.3d at 480–81. In essence, Plaintiff reiterates the arguments rejected by the Sixth Circuit in *Cutshall* but asks this Court to reach the opposite conclusion. *Cutshall* authoritatively precludes a finding in the present case that Plaintiff had a cognizable liberty or property interest or a fundamental right abridged by publication of his name in the Registry.

 Even if this Court were to find some arguable equal protection or due process violation, Fromson would nevertheless be entitled to qualified immunity unless Plaintiff could show that his rights were "clearly established" at the time that Fromson acted. In determining whether a right is clearly established, the court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other Circuits. *See Bonnell v. Lorenzo,* 241 F.3d 800, 824 (6th Cir.2001). "The contours of the right [asserted by a plaintiff] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). However, "[t]his is not to say that an official action is protected by qualified immunity unless the

very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Id.* (citation omitted). In other words, qualified immunity gives law enforcement officials " 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)); *Sova v. City of Mount Pleasant,* 142 F.3d 898, 902 (6th Cir.1998).

### 3. Clearly Established

 There is no Supreme Court precedent, precedent in the Sixth Circuit, or body of precedent in other Circuits which holds that registering a person who has pled to a listed sex offense, pursuant to an arguably mistaken reading of a sex registration act, violates the registeree's rights to Equal Protection or Due Process— whether or not the registeree's plea is withdrawn, a charge is dismissed, or a conviction is reversed. Fromson acted pursuant to published procedures governing situations. Fromson's actions may demonstrate a certain level of negligence, but do not demonstrate him to be " 'plainly incompetent or [one] who knowingly violate[s] the law.' " *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. at 1096 (1986)). It was not unreasonable for an officer in Fromson's circumstances to register Plaintiff immediately after his guilty plea, as distinguished from some later date, such as the sentence or the end of the appeal process. Consequently, Fromson is entitled to the protection of the qualified immunity doctrine because of the lack of any binding precedent that should have alerted him, or any other reasonably

well-trained officer, to a violation of Plaintiff's federal rights.

### III. *State Law Claims*

 Dismissal of Plaintiff's federal claims leaves pending his state-law counts, which fall within this Court's supplemental jurisdiction. 28 U.S.C. § 1367. Generally, a district court should decline to exercise its supplemental jurisdiction over state-law claims if all federal claims have been dismissed. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997). Remand of Plaintiff's state-law claims is especially warranted in the present case, as Plaintiff raises claims under SORA that the state appellate courts have not yet resolved. The Court will therefore exercise its discretion to remand all state-law claims. Additionally, Plaintiff's federal claims against the departmental defendants and their official-capacity employees must likewise be remanded to state courts, as this court lacks jurisdiction to consider the merits of those claims. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 337–38 (6th Cir.1990).

### *JUDGMENT*

In accordance with the opinion filed this date:

IT IS ORDERED AND ADJUDGED that the motion of the Michigan Department of State Police to Dismiss (docket # 39) and the motion of the Michigan Department of Corrections to dismiss (docket # 11) be and hereby are GRANTED on grounds of Eleventh Amendment immunity. All claims against those defendants, and their employees sued in their official capacities, are DISMISSED for lack of jurisdiction.

IT IS FURTHER ORDERED AND ADJUDGED that the motion of Defendant Fromson for summary judgment (docket # 37) be and hereby is GRANTED as to all federal claims. Judgment is entered in favor of Defendant Fromson and against Plaintiff on all federal claims, on the ground of qualified immunity.

IT IS FURTHER ORDERED that all claims against unnamed defendants are DISMISSED without prejudice.

IT IS FURTHER ORDERED that the motion of the Michigan Department of State Police to Remand Claims (docket # 12) be and hereby is GRANTED. The following claims are remanded to the Michigan Court of Claims and the Ingham County Circuit Court: all federal claims against the Michigan Department of State Police and the Michigan Department of Corrections (and their employees sued in an official capacity) and all state-law claims against any defendant.